UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**PRAIRIE LAND COMPANY**          CIVIL ACTION NO. 2:20-CV-00748

**VERSUS**                        JUDGE DAVID C. JOSEPH

**CONOCOPHILLIPS COMPANY**        MAGISTRATE JUDGE KAY

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") filed by Defendant ConocoPhillips Company ("Conoco") in the above-captioned matter [Doc. 6]. The Plaintiff, Prairie Land Company ("Prairie") opposes the Motion [Doc. 11]. For reasons which follow, the Motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

This matter was filed in state court on April 8, 2020, and removed to this Court on June 12, 2020. The litigation arises out of Conoco's oil and gas exploration and production activities on approximately 1,000 acres of land in Calcasieu Parish owned by Prairie on which Conoco allegedly caused contamination (the "Property"). [Doc. 1, Ex. 3]. Specifically, Plaintiff alleges in its petition (the "Petition") that from 1944 until 1987 Conoco's predecessors-in-interest operated two oil wells on the Property pursuant to a 1943 Oil, Gas, and Mineral lease (the "1943 Lease") of the Property, as well as a total of five surface leases relative to approximately six (6) acres of the Property whereon Conoco allegedly stored oilfield equipment, including a tank battery facility. [*Id.*]. Among other claims, Prairie alleges that Conoco, in conducting oil and gas extraction and storage activities on the Property, contaminated the

1

surface and subsurface of the Property by the disposal of oilfield waste in unlined earthen pits and otherwise wrongfully causing pollution on the Property. [*Id.*]. As a result of these activities, Prairie claims it is entitled to compensatory, punitive, and exemplary damages from Conoco, as well as injunctive relief, based on a host of legal theories.[1] [*Id.*].

On July 6, 2020, Conoco filed the instant Motion alleging, among other reasons, that this matter should be dismissed because of the existence of an "Assignment and Bill of Sale" (the "Assignment") executed on July 16, 1987, with an effective date of December 1, 1986, pursuant to which Prairie, Conoco, and Central Crude, Inc., all agreed to Conoco's transfer of its interest in the Property to Central Crude ("Central"). [Doc. 6, Ex. 2].[2] Prairie filed its opposition on July 31, 2020 [Doc. 11], to which Conoco filed a reply brief on August 4, 2020. [Doc. 12].

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a plaintiff's claims before filing its answer when the pleadings, on their face, fail "to state a claim upon which relief can be granted." A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[1] Specifically, Prairie alleges causes of action for negligence under Louisiana Civil Code Article 2315, a continuing tort and continuing trespass, breach of an express contract, breach of its implied obligations under the Louisiana Civil Mineral Code, violation of Civil Code Article 667, and violation of Civil Code Articles 2317 and 2322 (premises liability). [Doc. 1, Ex. 3]. Plaintiff also alleges that Conoco: (i) committed fraud and misrepresentation by allegedly hiding its pollution from Prairie, (ii) is liable for punitive damages for wanton or reckless conduct under former Civil Code Article 2315.3, (iii) is liable for continuing nuisance and trespass under Civil Code Article 486, and (iv) is entitled to damages for unjust enrichment if they have no other adequate remedy at law. [*Id.*].

[2] The Assignment is properly before the Court on a 12(b)(6) motion because it was attached to and incorporated into Plaintiff's state court Petition, which was then removed by the Defendant to this Court. [Doc. 1, Ex. 3].

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Although the Rule 8 pleading standard does not require "detailed factual allegations;" mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. In sum, if the factual allegations asserted in the complaint are wholly speculative or if it is apparent from the face of the complaint that there is an absolute bar to recovery, the claim should be dismissed. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

### DISCUSSION

**I.     Claims for Breach of Express and Implied Contract**

Conoco first argues that all of the Plaintiff's contractual claims, whether express or implied and whether based in the Louisiana Civil Code or Louisiana

3

Mineral Code, fail to state a plausible claim because of the parties' execution of the Assignment. Under the Assignment, to which both parties' predecessors-in-interest were signatories, Conoco assigned to Central all of its "right, title, and interest" in and to the 1943 Lease on the Property "together with all rights and privileges appurtenant thereto, and all contracts, agreements, permits, franchises, licenses, easements, servitudes, and rights-of-way pertaining to the assigned interest or the production and marketing of hydrocarbons therefrom." [Doc. 6, Ex. 2, p. 1]. Conoco also transferred to Central all of the oilfield equipment and other personal property used in conjunction with the subject lease. [*Id*.]. With Prairie's consent, the Assignment further obligated Central to, among other things:

1) Assume responsibility for the plugging and abandonment of all wells and reclamation of the Property [*Id*. at p. 4];

2) Comply with "all local, state, and federal rules and regulations" to "restore the premises to the condition they were in prior to the drilling of said well" [*Id*. at p. 3];

3) Accept the Property "subject to all of the express and implied covenants and obligations pertaining thereto" [*Id*.]; and

4) "Indemnify and hold [Conoco] harmless from any liability or expense that may become due or payable in connection with any well(s) plugged before or after the effective date of this Assignment, whether or not such liability or expense is incurred as a result of demands made by any authorized regulatory body, or any parties claiming to have a vested interest in the subject Property" [*Id*.].

Importantly, Prairie expressly signed the Assignment, thereby "consent[ing] to this assignment" "acknowledge[ing] that all obligations of [Conoco] have been fulfilled," agreeing to "hereafter look to [Central] to fulfill all obligations of Conoco," and "expressly release[ing] [Conoco] from any liability or obligations under the terms of the lease." [*Id.* at p. 4].

Among other things, Prairie argues in its opposition that, at most, the Assignment releases Conoco from the 1943 Lease, but does not apply to any of the surface leases – the most recent one having been executed between Prairie and Conoco approximately a year prior to the Assignment. While the Assignment does not specifically reference these leases, its scope includes "all contracts [and] agreements … pertaining to the assigned interest or the production and marketing of hydrocarbons therefrom." [*Id.* at p. 1]. Furthermore, given that: (i) the surface leases were clearly intended and used to service the wells operating pursuant to the 1943 Lease, including the storage of production-related equipment; (ii) the Assignment transferred all production-related equipment to Central [*Id.*]; and (iii) the "post-Assignment" 1987 surface lease between Central and Prairie took effect the very same day (June 2, 1987) as the "pre-Assignment" 1986 surface lease between Conoco and Prairie expired, it is clear that the surface leases – including the 1986 surface lease still in force on the effective date of the Assignment – were intended by the three parties to the Assignment to be subject to the terms thereof. [Doc. 6, Ex. 5].

Because it is apparent from the documents attached to the Petition that there is an absolute bar to recovery as to any contractual claims related to the mineral and surface leases between Prairie and Conoco, Prairie's claims for breach of an express

5

contract and breach of implied obligations under the Louisiana Civil Code and Louisiana Mineral Code are dismissed with prejudice. [Doc. 6, Ex. 2].

## II. Tort-Based Claims

Conoco next asserts that Prairie has failed to state claims upon which relief can be granted with regard to: (i) its claims pursuant to Louisiana Civil Code Article 2315, (ii) its claims for punitive damages under the former Louisiana Civil Code Article 2315.3, (iii) its strict liability claims under former Articles 667, 2317, and 2322 of the Civil Code, and (iv) its continuing tort claim. The viability of each of these categories of claims requires independent analysis.

### a) Article 2315

Conoco's assertion that the Assignment absolves it of any tort-based liability is compelling. Louisiana Civil Code Article 2046 provides: "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Here, the Assignment broadly released Conoco from "any liability or obligation under the terms of the lease." [Doc. 6, Ex. 2, p. 4]. Since Conoco's activities on the Property were premised on the existence of a lessor/lessee relationship, the parties' execution of the Assignment is clearly applicable to the existence and scope of any tort-based liability. However, taking the facts alleged in the complaint as true, the Petition plausibly asserts that certain activities of Conoco fell outside of the terms of the applicable contracts and within the applicable statute of limitations.[3] Accordingly, insofar as Prairie has

---

[3] In this regard, the Petition alleges that, "Plaintiff did not have actual knowledge of the Defendant's fault, negligence, and breach of contract until less than a year prior to the filing of this suit." [Doc. 1, Ex. 3].

6

pleaded facts asserting claims under Louisiana Civil Code Article 2315, such fact-based claims will survive the Motion.

### b) Punitive Damages

Former Article 2315.3 of the Louisiana Civil Code provided that, "[i]n addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." The previous version of Article 2315.3 was in effect between 1984 and 1996, and only applies to causes of action that arose during that time period. In this regard, Louisiana law is clear that in order to state a cause of action for punitive damages, the plaintiff must plead facts establishing a viable cause of action during the effective period of the previous version of Article 2315.3 (from September 1, 1984 until April 16, 1996). *See, e.g., Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp.*, No. 2:09 CV 1100, 2012 WL 27475, at *2 (W.D. La. Jan. 3, 2012). Plaintiffs have failed to do so here. Accordingly, Plaintiff's claims for punitive damages are dismissed without prejudice.

### c) Strict Liability

Conoco also seeks dismissal of Prairie's strict liability claims under Civil Code Articles 667, 2317, and 2322. The pre-1996 version of La. Civ. Code Art. 667 imposes liability on landowners or proprietors for actions that damage his neighbors caused by ultrahazardous activities. *Morgan Plantation, Inc. v. Tennessee Gas Pipeline Co., LLC*, No. 16-CV-1620, 2017 WL 4864489, at *5 (W.D. La. Sept. 21, 2017) (citations omitted). According to the Petition, the damage on the Property was "caused by

7

[Conoco's] storage, discharge, and disposal of toxic and hazardous and toxic (sic) oil field waste…." [Doc. 1, Ex. 3]. This pleading is sufficient to withstand a Rule 12(b)(6) motion.[4]

Articles 2317 and 2322 concern premises liability. Prior to 1996, to recover under Article 2317, a plaintiff had to establish: "(1) the thing causing his damage was in the custody of the defendant; (2) the thing had a 'defect' or a condition creating an unreasonable risk of harm; and (3) the defective condition caused plaintiff's injuries." *Hebert v. Sw. La. Elec. Membership Corp.*, 667 So. 2d 1148, 1157 (La. Ct. App. 1995) (citing *Oster v. Dep't of Transp. & Dev.*, 582 So. 2d 1285 (La. 1991)). To recover under Article 2322, a plaintiff must show, "(1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation." *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 182-83 (La. 2013). Prairie has failed to plead facts in its Petition sufficient to meet these elements.[5] Accordingly, Plaintiff's claims for premises liability are dismissed without prejudice.

### d) Continuing Tort Claim

A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Crump v. Sabine River Auth.*, 737 So. 2d 720,

---

[4] It should be noted that the Court explicitly makes no determination as to whether the alleged conduct constitutes an ultrahazardous activity under applicable law or the likely effect of the Assignment in dispensing of such a claim. These issues are beyond the scope of a ruling pursuant to Fed. R. Civ. P. 12(b)(6).

[5] For further discussion, see analysis in *Alford v. Chevron U.S.A. Inc.*, 13 F. Supp. 3d 581, 608-609 (E.D. La. 2014).

728 (La. 1999). The petition clearly establishes that Conoco ceased its activity on the Property in 1987 upon its execution of the Assignment. Since this time, the Petition alleges no activity taken by Conoco or its predecessors-in-interest that would constitute a continuing tort. Accordingly, Plaintiff's claims in this regard are dismissed without prejudice.

### III. Fraud Claims

In addition to the discussion above, Prairie asserts in its Petition that Conoco has engaged in fraud and misrepresentation by concealing certain of its activities on the Property that allegedly caused pollution. [Doc. 1, Ex. 3]. For the reasons discussed in *Alford v. Chevron U.S.A. Inc.,* Plaintiff's claim of fraud does not satisfy the standard of specificity set forth in Federal Rule of Civil Procedure 9(b). *See Alford*, 13 F. Supp. 3d at 594.[6] As such, Prairie's fraud claims are dismissed without prejudice.

### IV. Other Claims Asserted

Plaintiff's Petition also asserts claims for recovery for civil fruits, breach of servitudes, a claim under the Restatement of Torts (Second) 324(a), and a claim of unjust enrichment. Because the Petition contains insufficient factual allegations to support these causes of action, these claims are summarily dismissed without prejudice to re-pleading.

---

[6] The Court notes that the Petition removed to federal court in the *Alford* case contains an identical generalized allegation of fraud as does the matter *sub judice*. Indeed, the entirety of the Petitions in the two matters are substantially similar.

## Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Conoco's Motion.

IT IS HEREBY ORDERED that the Court dismisses WITH PREJUDICE Prairie's contractual-based claims against Conoco, including claims of breach of express and implied contract under the Louisiana Civil Code and Louisiana Mineral Code.

IT IS FURTHER ORDERED that the Court dismisses WITHOUT PREJUDICE to re-filing in an amended Complaint, the following claims against Conoco:

- Claim for punitive damages under former La. Civ. Code Art. 2315.3,
- Claim for premises liability under La. Civ. Code Arts. 2317 and 2322,
- Continuing tort claim,
- Claim of fraud,
- Claim for civil fruits,
- Claim for breach of servitude,
- Claim under the Restatement of Torts (Second) 324(a), and
- Claim of unjust enrichment.

IT IS FURTHER ORDERED that in all other respects, Conoco's Motion is DENIED.

IT IS FURTHER ORDERED that Plaintiff amend its Complaint in accordance herewith no later than twenty-one (21) days from the date of this order. <u>The amended Complaint, if any, must be drafted in compliance with Federal Rule of Civil Procedure</u>

10

8(a). Failure to timely amend the Complaint will result in dismissal of the foregoing claims with prejudice.

THUS DONE AND SIGNED in Chambers on this 22nd day of September, 2020.

*David C. Joseph*
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE